# STATE OF MICHIGAN

# COURT OF APPEALS

---

ALI A. EL-KHALIL,

    Plaintiff-Appellant,

v

OAKWOOD HEALTH CARE INC., OAKWOOD
HOSPITAL SOUTHSHORE, OAKWOOD
HOSPITAL DEARBORN, DR. RODERICK
BOYES, M.D., and DR. IQBAL NASIR, M.D.,

    Defendant-Appellees.

UNPUBLISHED
April 17, 2018

No. 329986
Wayne Circuit Court
LC No. 15-008259-CK

---

ON REMAND

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In this breach of contract and civil rights action, we previously affirmed the trial court's order granting summary disposition in defendants' favor and dismissing plaintiff's complaint. *El–Khalil v Oakwood Health Care Systems, Inc*., unpublished per curiam opinion of the Court of Appeals, issued April 4, 2017 (Docket No. 329986). In doing so, we reviewed the motion under the standard set forth in MCL 2.116(C)(10). *Id*. slip op page 2. The Michigan Supreme Court has now, in lieu of granting leave to appeal, vacated our prior opinion and remanded this case for reconsideration under MCR 2.116(C)(7) and (8). *El-Khalil v Oakwood Health Care, Inc*, 501 Mich 940; 904 NW2d 601 (2017). We again affirm the trial court's order.

In our prior opinion, we summarized the relevant facts as follows:

> Plaintiff, a podiatrist, began employment with defendant Oakwood Hospital Dearborn as a staff physician on May 27, 2008. He ended his staff employment in June 2011, at which time he entered into contracts, in the form of bylaws of medical staff, with the defendant medical facilities as an independent physician, obtaining staff privileges at Oakwood Annapolis Hospital, Oakwood Heritage Hospital, Oakwood Hospital and Medical Center, and Southshore Medical Hospital. Every year plaintiff, like all other independent physicians, was required to request reappointment and be re-credentialed for the following year.

-1-

Plaintiff worked without incident, obtaining reappointments and being re-credentialed over the next few years, building his practice.

In 2014, plaintiff allegedly obtained information about certain physicians at Oakwood Hospital and Medical Center engaging in illegal activities (healthcare fraud and professional negligence). According to plaintiff, when he confronted them and reported the actions to proper authorities, defendants retaliated against him by initiating an administrative agency proceeding against him which resulted in plaintiff having to take anger management classes. In August 2014, plaintiff initiated legal action against the defendants for violation of the civil rights act (race discrimination) and for tortious interference with an advantageous business relationship, based upon the allegations that defendants had made against him and which had resulted in the administrative agency proceeding. These claims were dismissed on defendants' summary disposition motion, the trial court having found that defendants were statutorily immune from liability and that plaintiff failed to state a discrimination claim under the civil rights act. Plaintiff filed a delayed application for leave to appeal that decision with this Court, which we denied.[1]

Plaintiff filed the instant action in June 2015, asserting that since the time he initially sued defendants, they have continued to engage in actions attempting to prevent plaintiff from practicing at Oakwood Dearborn and Oakwood Southshore. According to plaintiff, he in fact received correspondence from the Chiefs of Staff of those facilities, defendants Boyes and Nasir, indicating that his staff privileges at those locations would expire in June 2015 even though his privileges were not set to expire until November 2015. The correspondence further indicated that the medical executive committees of the facilities had recommended that plaintiff not be reappointed to the medical staffs. Plaintiff thus asserted claims of breach of contract and retaliation in violation of the civil rights act.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (8). They argued that plaintiff's staff privileges were set to expire in June 2015 and that the executive committee decided not to renew his privileges such that there was no breach of contract. Defendants additionally argued that there was no breach of contract because the bylaws signed by plaintiff and defendants did not constitute a contract, that the breach of contract claim was barred by release and that defendants were entitled to qualified immunity. As to the civil rights claim, defendants asserted that plaintiff failed to set forth a prima facie case of retaliation and, because there is a statutory ban on disclosure of peer review information, plaintiff could not obtain discovery to support his claim. The trial

---

[1]*El–Khalil v Oakwood Health Care Systems, Inc.*, unpublished Order of the Court of Appeals, entered January 8, 2016 (Docket No. 328569).

court granted defendants' motion. The trial court found that the bylaws were an enforceable contract but that the documents submitted by the parties indicate that plaintiff's most recent appointment term was set to expire on June 25, 2015, not in November 2015 as plaintiff claims. Thus, defendants did not terminate plaintiff's appointment term. The trial court further found that defendants' failure to renew plaintiff's appointment was not a breach of contract, as the allegations relied upon by defendants in making their decision relate directly to plaintiff's ability to provide efficient and quality care and plaintiff provided no evidence that the peer review was a sham. The trial court further found that plaintiff released defendants from liability under the bylaws because plaintiff offered no support for his allegations of malice and bad faith. The trial court found that defendants followed the guidelines set forth in the bylaws and were entitled to qualified immunity under the Health Care Quality Improvement Act and the Michigan Peer Review Immunity Statute. Finally, the trial court found that plaintiff failed to state a claim for retaliation in that, essentially, plaintiff failed to establish any causal connection between his protected activity and an adverse employment action.

Plaintiff asserts that he stated a claim for unlawful retaliation under the Elliott Larsen Civil Rights Act. We disagree.

We review de novo a trial court's ruling on a motion for summary disposition. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). Summary disposition is appropriate under MCR 2.116(C)(7) because of release, immunity granted by law, or statute of limitations, among other things. "When reviewing a motion for summary disposition under MCR 2.116(C)(7), an appellate court accepts all the plaintiff's well-pleaded allegations as true, and construes them most favorably to the plaintiff, unless specifically contradicted by documentary evidence." *Xu v Gay*, 257 Mich App 263, 266; 668 NW2d 166 (2003). A court must also consider any documentary evidence to determine whether there is a genuine issue of material fact regarding whether a valid exception under MCR 2.116(C)(7) exists. *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred is an issue of law for the court." *Id*. We review de novo questions of law. *Kessler v Kessler*, 295 Mich App 54, 57; 811 NW2d 39 (2011).

A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Dalley v Dykema Gossett*, 287 Mich App 296, 304–05; 788 NW2d 679 (2010). When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party and summary disposition should be granted only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id*., quoting *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

Under the Elliott Larsen Civil Rights Act (ELCRA):

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701]

"To establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Rymal v Baergen*, 262 Mich App 274, 300; 686 NW2d 241 (2004).

In this matter, plaintiff relies on indirect (or circumstantial) evidence to establish his case of retaliation. When a plaintiff presents circumstantial rather than direct evidence of an employer's retaliatory motive, we examine the claim under the *McDonnell Douglas*[2] burden-shifting analysis. *Cuddington v United Health Services, Inc*, 298 Mich App 264, 276; 826 NW2d 519 (2012). This framework allows a plaintiff "to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination." *Hazle v Ford Motor Company*, 464 Mich 456, 462,; 628 NW2d 515 (2001), quoting *DeBrow v Century 21 Great Lakes, Inc (After Remand),* 463 Mich 534, 537–538; 620 NW2d 836 (2001). As explained in *Hazle*:

[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case. The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason. "Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." If the employer makes such an articulation, the presumption created by the McDonnell Douglas prima facie case drops away.

At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the

---

[2] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

employer toward the plaintiff." [A] plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination." [Id. at 464–466, internal citations omitted]

Plaintiff engaged in a protected activity by filing a discrimination case against defendants in 2014. Although defendants argue otherwise, MCL 32.2701 does not require that the 2014 lawsuit be successful, or even meritorious. MCL 32.2701 simply prohibits retaliation if a person has, among other things, "filed a complaint" under the civil rights act. Plaintiff's mere act of filing the 2014 complaint against defendants alleging violations of the civil rights act was thus a protected activity. Defendants clearly knew of this activity because they defended against the 2014 lawsuit. The first two elements of a prima facie case of unlawful retaliation have thus been established. Plaintiff must next establish, in his prima facie case, that defendants took an adverse employment action against him. *Rymal*, 262 Mich App at 300.

"Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Pena v Ingham Co Rd Com'n*, 255 Mich App 299, 312; 660 NW2d 351 (2003)(citations omitted). Plaintiff was denied the renewal of hospital privileges he had for many years, albeit subject to a yearly renewal and re-credential process. We are satisfied that this was an adverse employment action.[3]

Finally, plaintiff must establish that this adverse employment action was causally related to his filing of the 2014 lawsuit. *Rymal*, 262 Mich App at 300. To show causation in a retaliatory discrimination case, "[p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *Garg v Macomb Co Cmty Mental Health Services*, 472 Mich 263, 286; 696 NW2d 646 (2005), opinion amended on denial of reh. (July 18, 2005).

Plaintiff alleged that the failure to renew his hospital privileges came only after and because of his 2014 lawsuit. In his complaint, in fact, plaintiff alleged that no adverse actions had been taken against him until after the 2014 lawsuit. Attached to and thus part of his complaint, however, were emails from three doctors who practiced with plaintiff (ranging in date from February 2015 through March 2015) asserting that plaintiff had threatened them and that they do not feel safe in the hospital around him. Plaintiff also attached his response to the

---

[3]Although plaintiff initially claimed that defendants "suspended" his hospital privileges and that his privileges were not set to expire until November 2015, plaintiff does not dispute the expiration date of June 2015 on appeal.

emails, where he stated that the allegations were false. Plaintiff also, in his response, attempted to discredit the statements, but provided no evidence to show that retaliation was a motivating factor in not renewing his hospital privileges. Plaintiff, then, provided nothing but temporal proximity between the adverse employment action and his protected activity, which is insufficient to show causal connection. *Garg*, 472 Mich at 286. Having failed to present a prima facie case of retaliation, summary disposition of plaintiff's retaliation claim was appropriate under MCR 2.116(C)(8).

Plaintiff's breach of contract claim was premised upon his staff privileges expiring sometime after June 2015, and plaintiff no longer claims that he was entitled to staff privileges after that time. We thus need not consider plaintiff's breach of contract claim premised upon the time that staff privileges were not renewed. Plaintiff appears to also assert that defendants breached the bylaws by denying him a renewal of staff privileges for reasons other than those related to the efficient delivery of quality patient care and to professional ability and judgment. This claim was not raised in plaintiff's amended complaint. Because, however, the trial court addressed this claim, we will address it briefly.

Plaintiff points only to his exemplary record as a doctor as the sole source of support for his claim. Again, however, attached to plaintiff's complaint are complaints against plaintiff by other doctors of harassing and threatening behavior and the Medical Executive Committees of Oakwood Hospital-Dearborn and Oakwood Hospital-Southshore's letter to plaintiff advising that the recommendation that he not be reappointed was based on his threatening behavior and verbal abuse of staff from February through May 2015.

The bylaws, attached to plaintiff's complaint, set forth, in part, the following as basic qualifications for membership:

> A. Basic Qualifications. Only Practitioners who can demonstrate their character, health, experience, training, demonstrated current professional competence, judgment, adherence to the ethics of their profession, *and ability to work cooperatively with others*, such that the Medical Staff and the Board are assured that they will furnish quality care in a manner that promotes a safe, *cooperative and professional* health care environment, shall be eligible for Medical Staff membership. (emphasis added)

While C. in the bylaws further provides that membership will not be denied "on the basis of any criteria unrelated to the efficient delivery of quality patient care in the hospital, to professional ability and judgment, or to the community need," treatment of staff may well affect the quality of care. The case of *Wieters v Roper Hosp, Inc*, 58 Fed Appx 40 (CA 4 2003) demonstrates this principle. In that case, the plaintiff was a surgeon who had his staff privileges at a hospital suspended for his "disruptive behavior." The surgeon frequently expressed his dissatisfaction with the care that the hospital provided its patients in an angry and disruptive manner. *Id*. at 41. The surgeon sued the hospital, but the trial court granted summary disposition to the hospital. On appeal, the surgeon argued that "the action was taken not in the reasonable belief that it would further quality care, but to halt his complaints about the declining standards of care at the hospital." *Id*. at 45. In an affidavit, the president of the hospital's medical staff detailed that the surgeon had engaged "in seventeen instances of disruptive conduct, but gives no specifics." The

affidavit described the surgeon as erupting in rage and engaging in unprofessional behavior. The Fourth Circuit stated, "[i]t is not difficult to see that the hospital would be justified in the belief that this conduct was detrimental to the quality of the health care it provided." While this case is not binding on this Court, we find it persuasive in how a doctor interacts with staff may serve as the basis for a reasonable belief that the quality of health care is being affected, regardless of his or her record as a doctor in general. Dismissal of plaintiff's breach of contract claim under MCR 2.116(C)(8) was thus appropriate.

Because we have determined that dismissal of both plaintiff's retaliation and breach of contract claims was appropriate, we need not consider plaintiff's remaining claims on appeal.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro